

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 13, 2019

**REQUEST TO BE FILED UNDER SEAL**

<u>Via Email and Hand Delivery</u>
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re:    <i>United States v. Zhongsan Liu</i>, 19 Cr. 804 (VEC)

Dear Judge Caproni:

  The Government respectfully submits this letter to inform the Court of a potential conflict of interest arising from (1) the fact that the defendant's counsel currently represents, or previously represented, an alleged, uncharged co-conspirator of the defendant; and (2) the fact that the defendant's legal fees may be paid by a third-party benefactor implicated in the case. For the reasons set forth below, the Government respectfully submits that a *Curcio* inquiry is warranted prior to any further proceedings in this matter, but that these potential conflicts may be waived by the defendant. Attached as Exhibit A, for the convenience of the Court, is a list of proposed questions that the Court may wish to put to the defendant in connection with any such *Curcio* proceeding.

### I.  Background

  On September 16, 2019, Zhongsan Liu (the "defendant") was arrested and charged by complaint (the "Complaint") with participating in a conspiracy to commit visa fraud, in violation of Title 18, United States Code, Sections 371 and 1546(a). On November 12, 2019, a grand jury returned a one-count indictment (the "Indictment") charging the defendant with the same offense. The defendant retained Raymond Wong, Esq., Valerie Wong, Esq., and Robert Jun, Esq. of Wong, Wong & Associates (collectively, "Defense Counsel") to represent him in this case.

Based on conversations with Defense Counsel, the Government understands that Defense Counsel either currently represents or previously represented ▇▇▇▇▇  The Complaint refers to ▇▇▇ as an unnamed co-conspirator with whom the defendant conspired to commit visa fraud.[1] Specifically, the Complaint alleges that the defendant and ▇▇▇ worked for the government of the People's Republic of China (the "PRC Government") in the United States, and in particular for the China Association for International Exchange of Personnel ("CAIEP"), a PRC Government agency that seeks to recruit foreign experts for positions and projects in China.  The Complaint further alleges that at the direction of the PRC Government, the defendant conspired to help ▇▇▇▇ and another prospective CAIEP employee fraudulently obtain J1 Research Scholar visas so that they could come to the United States to further CAIEP's talent-recruitment mission.  The Indictment refers to ▇▇▇▇ in paragraph 3(b)-(c) as the defendant's "colleague" and "a PRC Government employee." ▇▇▇ has not been charged with a crime and recently departed the United States following deportation proceedings.

In addition, because, *inter alia*, the defendant is an alleged PRC Government employee; PRC Government personnel are alleged to have participated in the charged visa fraud scheme; and the defendant's disclosure to Pretrial Services reflects limited financial resources[2], it appears possible that a third party may be paying the defendant's legal fees and/or lending the defendant money in order to pay his legal fees.

## II.  Applicable Law

### A.  Conflicts of Interest, Generally

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes "the right to representation by conflict free counsel."  *United States* v. *Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002).  Courts have two separate obligations where there is a potential conflict of interest.  First, there is an "inquiry obligation," pursuant to which the court must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all."  *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994).  Second, if the district court finds that the defendant's attorney faces an actual or potential conflict, a "disqualification/waiver" obligation arises, pursuant to which the court must either: (i) disqualify the attorney if the conflict is sufficiently severe, or (ii) if the conflict may be waived, conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

---

[1] Because this letter identifies and discusses an uncharged co-conspirator, whose identity is not otherwise in the public record, the Government respectfully requests that this letter be filed under seal.  In addition, in the event the Court holds a *Curcio* hearing in this matter, the Government respectfully requests that the Court refer to ▇▇▇ as "CC-1" during the hearing.

[2] The defendant disclosed that he has approximately $20,000 in a U.S. bank account and has an income of approximately $3,900 per month.

### B.  Representation of a Co-Conspirator

Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable."  *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003); *see also United States* v. *Stein*, 410 F. Supp. 2d 316, 328 (S.D.N.Y. 2006) (noting that one of the factors the Second Circuit has considered "in determining whether a conflict can be waived" is "whether, if the conflict concerns the interests of another client, the attorney's relationship with the other client is continuing or has been terminated").  However, New York Rule of Professional Conduct 1.9 provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in *the same or a substantially related* matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

N.Y. Rules of Prof'l Conduct 1.9(a) (emphasis added).  "Informed consent" means:

> [T]he agreement by a person to a proposed course of conduct after the lawyer has communicated information adequate for the person to make an informed decision, and after the lawyer has adequately explained to the person the material risks of the proposed course of conduct and reasonably available alternatives.

*Id.* Rule 1.0(j); *see also id.* Rule 1.0(e) (defining "confirmed in writing").

Because a potential conflict "might require a defendant to abandon a particular defense or line of questioning," the defendant should be offered an opportunity to "seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."  *Id.* (quoting *United States* v. *Fulton*, 5 F.3d 605, 613 (2d Cir. 1993)).  If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conduct[s] a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation."  *Id.*  Nevertheless, "[t]he district court retains the discretion to reject that waiver if the attorney's conflict jeopardizes the integrity of the judicial proceedings."  *United States* v. *Jones*, 381 F.3d 114, 120 (2d Cir. 2004).

### C.  Payment of Legal Fees by Third Parties

A conflict can arise when an attorney is paid by someone other than the attorney's client:

> Ethical considerations warn against an attorney accepting fees from someone other than her client.  As we stated in a different context,

the acceptance of such "benefactor payments" "may subject an attorney to undesirable outside influence" and raises an ethical question "as to whether the attorney's loyalties are with the client or the payor."

*United States* v. *Locascio*, 6 F.3d 924, 932 (2d Cir. 1993) (quoting *In re Grand Jury Subpoena Served Upon John Doe*, 781 F.2d 238, 248 n.6 (2d Cir. 1986) (*en banc*)); *see Wood* v. *Georgia*, 450 U.S. 261, 269-70 (1981) ("Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party."); *United States* v. *Wells*, 394 F.3d 725, 733-34 (9th Cir. 2005); *United States* v. *Arakelian*, No. 04 Cr. 447 (RPP), 2005 WL 2173923, *6-7 (S.D.N.Y. Sept. 6, 2005) (describing *Curcio*-related inquiry related to potential benefactor payments); *Moreno-Godoy* v. *United States*, Nos. 13 Civ. 2383 (JSR) (GWG), 07 Cr. 354 (JSR), 2014 WL 1088300, at *32 (S.D.N.Y. Mar. 20, 2014) ("A conflict of interest can arise where a third party's payment of a defendant's attorney's fees leads to a theoretical division of loyalties."). *Cf. Triana* v. *United States*, 205 F.3d 36, 41-42 (2d Cir. 2000) (no actual conflict where attorney paid by unknown third party with whom attorney did not discuss tactics or strategy); *Familia-Consoro* v. *United States*, 160 F.3d 761, 766 (1st Cir. 1998) ("[T]hat a possible co-perpetrator pays a defendant's legal fees does not, without more, demonstrate that a real conflict tainted the representation he or she received.").[3]

## III.   Discussion

Defense Counsel either currently represents or previously represented ▮▮▮, the defendant's alleged co-conspirator, who has criminal exposure for the same visa fraud conspiracy charged in the Indictment. It should be assumed, for purposes of the conflict analysis, that ▮▮▮ disclosed confidences to Defense Counsel during the course of that representation. *See, e.g.*, *United States* v. *Stein*, 410 F. Supp. 2d 316, 324-25 (S.D.N.Y. 2006). Consequently, a potential conflict arises because Defense Counsel has an ethical obligation to protect from disclosure to the defendant the privileged information that Defense Counsel is presumed to have learned from ▮▮▮ There is a possibility that Defense Counsel's duty of confidentiality to ▮▮▮ could be at odds with Defense Counsel's duty to vigorously represent the defendant. In particular, Defense Counsel is prohibited from disclosing, in the course of Defense Counsel's representation of the defendant, any pertinent information that Defense Counsel learned from ▮▮▮ during the course of their representation of ▮▮▮

In addition, the Government respectfully submits that the present facts give rise to at least an "inquiry obligation," *Levy*, 25 F.3d at 153, regarding the possibility of a potential conflict of interest arising from a third-party benefactor paying the defendant's legal fees. In the event that a third party is paying the defendant's legal fees, or lending the defendant money in order to pay his legal fees, Defense Counsel may have a potential conflict of interest based on that payment arrangement. For example, it is conceivable that the third party could persuade counsel to avoid

---

[3] "[A]bsent special circumstances . . . , disclosure of fee information and client identity is not privileged . . . ." *In re Grand Jury Subpoena Served Upon John Doe*, 781 F.2d at 248.

seeking leniency by having their client attempt to cooperate, or to advise their client to refrain from testifying in his own defense. *See Wood*, 450 U.S. at 270 ("One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest."); *Amiel* v. *United States*, 209 F.3d 195, 198-99 (2d Cir. 2000) (reasoning that if trial counsel advised defendant not to testify even though testifying was in the best interests of the defendant, to avoid inculpating the payor of counsel's fees, "these facts . . . would entitle appellant to relief [on an ineffective assistance claim] on the ground that trial counsel abdicated his duty of loyalty by permitting a third party who paid his fees to influence his professional judgment in representing [the defendant]" (citations omitted)).

Therefore, the Government respectfully requests that the Court conduct a *Curcio* proceeding to advise the defendant of his right to conflict-free representation and to inquire as to whether he understands and waives the potential conflicts. After advising the defendant of the risks inherent in Defense Counsel's continued representation of him, the Government requests that the Court afford the defendant reasonable time to digest and contemplate those risks, as well as an opportunity to consult with independent counsel. *See United States* v. *Curcio*, 680 F.2d 881, 890 (2d Cir. 1982). If the defendant subsequently reiterates his wish to proceed with Defense Counsel as his attorneys, the Government requests that the Court elicit narrative responses from him designed to ascertain whether he is fully aware of the risks involved in the representation provided by Defense Counsel, and determine whether the defendant is making a knowing and intelligent waiver of his right to conflict-free representation.

Defense Counsel should be disqualified from representing the defendant if, after a full inquiry, the Court determines that the defendant has not knowingly waived this conflict; that the conflict is so egregious that no rational defendant could waive such a conflict; or that allowing Defense Counsel to represent the defendant would not ensure that this case would be conducted "within the ethical standards of the profession" such that the case appears "fair to all who observe [it]." *Wheat* v. *United States*, 486 U.S. 153, 160 (1988).  If, on the other hand, the Court determines that the defendant has made a knowing and voluntary waiver of his right to conflict-free counsel in this case, then the Government respectfully submits that Defense Counsel's representation of the defendant may continue in future proceedings.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Gillian S. Grossman
Assistant United States Attorney
(212) 637-2188

Attachment

Cc:     Raymond Wong, Esq.
        Valerie Wong, Esq.
        Robert Jun, Esq.

6

**Exhibit A.  Proposed *Curcio* Examination**

***United States v. Zhongsan Liu*, 19 Cr. 804 (VEC)**

A.  Introductory Questions

    a.  How old are you?

    b.  How far did you go in school?

    c.  Do you currently consult a doctor or a mental health professional for any condition?

    d.  Are you currently under the influence of alcohol, drugs, or medication of any kind?

    e.  Do you understand what is happening today?

B.  Circumstances of Representation

    a.  Are you currently represented by Raymond Wong, Valerie Wong, and Robert Jun of Wong, Wong & Associates?

    b.  How long have those attorneys represented you?

    c.  Have you been satisfied with the representation of Mr. Wong, Ms. Wong, and Mr. Jun to date?

    d.  Do you wish to continue to be represented by Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates?

    e.  Have you paid Mr. Wong, Ms. Wong, and Mr. Jun, or promised to pay them or their firm, for their services in this case?

    f.  Has anyone else lent you money so that you could pay Mr. Wong, Ms. Wong, and Mr. Jun for their services in representing you in this case?  Who is that?

    g.  Do you know if anyone else has paid Mr. Wong, Ms. Wong, and Mr. Jun, or promised to pay them or their firm, for their services in representing you in this case?  Who is that?

    h.  What is your understanding of that arrangement?

C. Potential Conflict of Interest Posed by Defense Counsel's Representation of Alleged Co-Conspirator

   a. Are you satisfied with the services of your attorneys thus far in the case?

   b. Have your attorneys informed you that they currently represent or previously represented CC-1, whom the Government alleges was your co-conspirator in the charged visa fraud conspiracy?

   c. Have your attorneys discussed with you their representation of CC-1?

   d. Do you understand that your attorneys' representation of CC-1 may put them in a position where their duty to CC-1 conflicts with their duty to you?

   e. The potential conflict could affect the way that your attorneys consider and advise you:

       i. Whether, and when, you should plead guilty;

       ii. Whether you should seek to cooperate with the Government;

       iii. What defenses you should raise;

       iv. Whether you should proceed to trial;

       v. Whether you should testify at trial;

       vi. Which witnesses should be cross examined, and what questions they should be asked;

       vii. Which witnesses to call, and what other evidence to offer on your behalf;

       viii. What arguments to make on your behalf to the jury;

       ix. What arguments to make to the Court, and what facts to bring to the Court's attention, before trial, during trial, or at your sentencing.

   f. Let me expand on some of those examples.

       i. Do you understand that your attorneys may not wish to take positions in your case before trial, during trial, or at sentencing that are critical of CC-1, even if criticizing her might help your defense?

       ii. Do you understand that your attorneys may not vigorously cross-examine

2

CC-1, should she testify against you, if they believe that such cross examination may be harmful to the interests of CC-1?

    iii.    Are you aware that your attorneys may have learned information from CC-1 that may be helpful in defending you, but that they are absolutely prohibited from using it to defend you because of the attorney-client privilege?

    iv.    Do you understand each of these examples?

g.    Do you understand that the greatest danger to you in this situation is the inability to foresee all of the possible conflicts that might arise because of your attorneys' representation of CC-1, on the one hand, and their representation of you, on the other?

h.    Do you understand that the potential conflict has existed throughout the entirety of the time that your attorneys have represented you?

## D. The Right to Conflict-Free Representation

a.    Do you understand that in every criminal case, including this one, each defendant is entitled to be represented by an attorney whose loyalty to him is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his client's interests?

b.    In other words, do you understand that you are entitled to an attorney who has only your interests in mind, and not the interests of any other client or third party?

c.    Do you understand that you have a right to consult with an attorney free from any conflict of interest arising from their representation of another client, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?

d.    Is your choice to be represented by Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates, a choice you have made freely and voluntarily, without any promises, threats, or inducements being made or offered to you?

e.    Do you understand that whenever someone other than the defendant is paying the lawyer who is representing that defendant, it is possible that whoever is paying may have interests different than the defendant's interests, and the lawyer's judgments may be influenced by the wishes of whoever is paying his bill, or what the lawyer thinks are the wishes of whoever is paying his bill, rather than the wishes of the defendant?

    f.  So it is possible, in this case, that Mr. Wong, Ms. Wong, and Mr. Jun may be influenced in the advice they give you and in the way they defend you by what they are told are the wishes of, or what they think are the wishes of, [*the payor*]. Those wishes may be different from yours. Do you understand that?

    g.  Do you understand that this situation—that is, having your lawyer paid by someone other than you—creates a risk to you that your lawyer may not be acting solely in your interests?

    h.  The Court is prepared to adjourn the remainder of this proceeding so that you may consult with an attorney other than Mr. Wong, Ms. Wong, and Mr. Jun about the potential conflicts of interest that I have described to you today. In addition, the Court can appoint an attorney for you to consult on this matter if you cannot afford one. Would you prefer to adjourn until you can give more thought to this matter?

E.  <u>Defendant's Understanding of the Conflict</u>

    a.  Do you understand that you have the right to object to the continued representation of that Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates based upon the existence of a conflict of interest?

    b.  It is important that you understand that no one, including the Court, can predict with any certainty the course that this case will take and that no one, including the Court, can foresee all the ways in which you may be disadvantaged by proceeding with that Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates. Do you understand that?

    c.  Do you understand that it is the view of this Court, based on my long experience as a judge, that it is ill advised to proceed with an attorney who has a potential conflict of interest of this kind?

    d.  Do you agree that if the Court permits you to proceed with that Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates, that in the event you are convicted, you will not be permitted to make any argument, on appeal or otherwise, based on the representation of that Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates and the conflict, or potential conflict, we have discussed? Do agree to waive, and give up, any argument of that kind?

    e.  To make sure you have understood what we have been discussing, please describe in your own words your understanding of the conflict or conflicts of interest that may arise in this case.

f. Have you spoken with any lawyer other than Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates, about the risks of being defended by your current counsel in this case?  [*If yes*]  Without telling me what was said, please tell me the name of the lawyer or lawyers, other than Mr. Wong, Ms. Wong, and Mr. Jun, with whom you spoke.  When did you speak with him/her/them?  For how long?

g. Do you understand that you have a right to consult with a lawyer other than Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates, to determine whether you want them to continue representing you, and that the Court will give you an opportunity to do so?

h. Do you understand that, if you cannot afford other counsel, the Court will appoint counsel to consult with you about this conflict-of-interest issue and/or to represent you?  Do you understand that the Court encourages you to consult with another lawyer about this conflict-of-interest issue?

i. The Court will give you an opportunity to think about what you have been told, whether or not you would like to speak with separate counsel about it.  After you have thought it over, the Court will ask whether you have considered the matters that the Court has talked to you about.  Then the Court will ask whether you wish to continue with [Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates, as your attorney.  Would you like to speak with separate counsel about these issues?  Do you need court-appointed counsel for the purpose of consulting with you about these conflict-of-interest issues?

j. Would you prefer to adjourn today's proceeding until you can give more thought to this matter?

F.  Continuation of the *Curcio* Hearing

a. After considering all that the Court has said about the ways in which having [*the payor*] pay your legal fees and in which your attorney's representation of CC-1 may adversely affect your defense, do you believe that it is in your best interest to continue with Mr. Wong, Ms. Wong, and Mr. Jun of Wong, Wong & Associates as your attorneys?

b. Is that your wish?

c. Do you understand that by choosing to continue with Mr. Wong, Ms. Wong, and Mr. Jun as your attorneys, you are waiving your right to be represented solely by an attorney who has no conflict of interest?

d. Are you knowingly and voluntarily waiving your right to conflict-free representation?

5

e.  Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of Mr. Wong, Ms. Wong, and Mr. Jun's representation of CC-1, you were denied effective assistance of counsel?

f.  Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of having [*payor*] pay your legal fees, you were denied effective assistance of counsel?

g.  Is there anything that the Court has said that you wish to have explained further?