Filed with the Classified Information Security Officer
CISO _____
Date 7/2/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
UNITED STATES OF AMERICA              :
                                       :
                 - v. -           :     19 Cr. 804 (VEC)
                                       :
ZHONGSAN LIU,                         :     MEMORANDUM OPINION
                                       :     &amp; ORDER
                 Defendant.          :
-------------------------------------------------------------- X     UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

VALERIE CAPRONI, United States District Judge:

Defendant Zhongsan Liu is charged with one count of conspiracy to defraud the United States of America and to commit visa fraud, in violation of 18 U.S.C. § 371. Currently pending before the Court is the Government's *in camera, ex parte* motion for a protective order pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3 § 4, and Federal Rule of Criminal Procedure 16(d)(1), regarding disclosure of certain classified information in the Government's possession. *See* Notice of Mot., Dkt. 58. In support of its motion, the Government submitted a memorandum of law, exhibits, and declarations of certain Government officials. Defendant filed a memorandum in opposition, urging the Court to deny the Government's motion or, at the very least, to permit Defendant's counsel with a security clearance to review the materials the Government seeks to delete pursuant to CIPA. *See* Def. Mem., Dkt. 70. Having reviewed the Government's submission *ex parte* and *in camera*, for the reasons set forth below, the Government's motion is GRANTED.

## BACKGROUND

On January 22, 2020, Defendant was charged in a superseding indictment (S1 19 Cr. 804) with one count of conspiracy to defraud the United States and agencies thereof and to commit visa fraud. Indictment, Dkt. 43. For purposes of this order, the Court assumes readers' familiarity with the additional facts of this case.

On June 8, 2020, the Government filed a classified, *ex parte*, *in camera* motion for a protective order pursuant to Section 4 of CIPA, 18 U.S.C. app. 3 § 4, and Federal Rule of Criminal Procedure 16(d)(1). Notice of Mot. Due to the classified nature of the Government's motion and the classified information discussed in the memorandum submitted in support of the motion, the Government filed its motion under seal, through the Classified Information Security Officer, accessible only to the Court and Court personnel with the requisite security clearance. In support of its motion, the Government filed — also *ex parte* and *in camera* — two classified declarations of senior Government personnel.

On September 4, 2020, Defendant filed a memorandum of law in opposition to the Government's CIPA Section 4 motion. *See* Def. Mem. Neither Defendant nor any member of his defense team had — or has had since — access to the classified materials that are the subject of the Government's motion. Defendant's memorandum, then, sets forth generalized arguments about why the Government's motion should be denied, along with speculation about what materials may be included within the records the Government seeks to delete.

The Government, in a public letter, replied to Defendant's opposition brief on September 8, 2020, responding only to Defendant's allegedly misguided arguments in opposition to the Government's motion. *See* Dkt. 71. On October 1, 2020, pursuant to Defendant's request and with the consent of the Government, the Court authorized Defendant to file an *ex parte* declaration explaining his theory of the case to assist the Court in its review of the Government's CIPA motion. *See* Dkt. 72. Defendant, through counsel, filed his *ex parte* declaration on October 23, 2020. Having determined that the defense's *ex parte* declaration was inadequate to provide the Court with an understanding of Defendant's theory of defense, the Court ordered Defendant to appear at an *ex parte* hearing to further explicate his merits defense to better assist

the Court in its review of the Government's motion. *See* Dkt. 110. On May 13, 2021, Defendant appeared before the Court for an *ex parte* hearing, during which the Court obtained additional detail on Defendant's anticipated merits defenses at trial; the Court used that understanding when evaluating whether any information subject to the Government's CIPA Section 4 motion could be relevant and helpful to the defense.

## LEGAL STANDARD

"CIPA, which establishes certain procedures for the handling of classified information in criminal cases, is designed to protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2d Cir. 2010) (cleaned up). Section 4 of CIPA provides that:

> "The Court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove."

18 U.S.C. app. 3 § 4.

CIPA Section 4 expounds on and clarifies a district court's authority pursuant to Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders that deny or restrict discovery for good cause, including "the protection of information vital to the national security." *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008) (quoting Fed. R. Crim. P. 16 advisory committee's note to 1966 amendment). Although CIPA Section 4 "*presupposes* a governmental privilege against disclosing classified information[, i]t does not itself *create* a privilege." *Id.* (citing *United States v. Mejia*, 448 F.3d 436, 455 & n.15 (D.C. Cir. 2006)). The privilege derives from the common-law privilege against disclosure of state secrets. *See id.* at 78–79 (citing *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991)); *see also United States v. Stewart*, 590 F.3d 93, 130 (2d Cir. 2009).

In *Aref*, the Second Circuit adopted the standard from *Roviaro v. United States*, 353 U.S. 53 (1957), to determine when the Government's invocation of the state-secrets privilege "must give way in a CIPA case." *Aref*, 533 F.3d at 79–80. Pursuant to the *Roviaro* standard as applied in cases analyzing motions pursuant to CIPA Section 4:

> "the district court must first decide whether the classified information the Government possesses is discoverable. If it is, the district court must then determine whether the state-secrets privilege applies because: (1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful to counter the government's case or to bolster a defense. To be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory information. Information can be helpful without being favorable in the *Brady* sense."

*Id.* at 80 (cleaned up).[1]

## DISCUSSION

### I. The Government's Motion

The Court has considered carefully all of the materials subject to the Government's motion. To aid in its review, the Court solicited both a written and oral *ex parte* submission from the defense articulating its theory of the case and its anticipated defenses at trial. Although the Court is mindful that its understanding of the facts of this case will likely develop more fully as trial approaches and begins, the Court believes that its decision to delay ruling on the

---

[1] *Aref* did not discuss the purported final step of the district court's analysis under the *Roviaro* standard: the need to balance the helpfulness of the evidence in question to the defense against the harm that might flow from publicly revealing that evidence. Were it necessary to reach that stage of the analysis, the Court agrees with the Government that, by its silence, the *Aref* court in no way meant to eliminate this final balancing stage of the *Roviaro* standard. *See* Gov't Mem. at 33 n.12; *see also United States v. Mostafa*, 992 F. Supp. 2d 335, 338 (S.D.N.Y. 2014) ("Only when information is relevant or helpful to the defense must the Court then take the third step of balancing the 'public interest in protecting the flow of information against the individual's right to prepare his defense.'" (quoting *Roviaro*, 353 U.S. at 62)).

4

Government's motion until pretrial motions had been made, briefed, and argued has enabled the Court to gain a sufficiently well-developed understanding of the issues and defenses in this case, as well as the likely evidence and witnesses, to decide the Government's motion at this time. *See United States v. Abu-Jihaad*, No. 07-CR-57, 2008 WL 346121, at *1 (D. Conn. Feb. 4, 2008), *aff'd*, 630 F.3d 102 (2010) (noting that court's delay in ruling on Government's CIPA Section 4 motion until after holding hearing on evidentiary motions allowed Court to better understand facts and issues relevant to Government's motion).

Based on its review of the Government's motion and supporting materials, the Court has little difficulty deciding that the Government may withhold from discovery all information that the Government seeks to delete pursuant to CIPA Section 4. First, a significant swath of the information is not itself discoverable under Rule 16, based on the Court's assessment of the crime charged, the possible defenses, and the likely witnesses and evidence at trial. *See DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir. 1991) (explaining that a materiality determination under *Roviaro* requires a court to consider "the crime charged, the possible defenses, the possible significance of the informant's testimony and other relevant factors" (cleaned up)). In fact, a significant majority of the information "has nothing whatsoever to do with any issue in the case or any criminal activity at all." *Abu-Jihaad*, 2008 WL 346121, at *5.

Second, the Court finds that the Government has properly invoked the state-secrets privilege, in that "there is a 'reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged,'" and the privilege has been "'lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" *Aref*, 533 F.3d at 80 (quoting *United States v. Reynolds*, 345 U.S. 1, 8, 10 (1953)). The Government's submission contains and describes with

particularity classified information, disclosure of which to the defense or to the public could reasonably be expected to cause serious damage to national security, necessitating protection against unauthorized disclosure. Of note, CIPA can be invoked to protect information that itself reveals matters of national security, information that would reveal the Government's intelligence-gathering capabilities, and information that would reveal the Government's sources and methods of collection. *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("[M]uch of the government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all."). In this case, all of the classified information falls into at least one of these categories.

Third, and most critically, with the limited exception of certain information in Classified Information-11,[2] for which the Government has proposed to submit an unclassified summary, none of the information in Classified Information-1 through Classified Information-11 would be helpful to the defense, let alone exculpatory under *Brady* and its progeny. In fact, the material that is relevant is *inculpatory*, rather than exculpatory. Even if an argument could be made that some information that the Government seeks to delete might be helpful to the defense, Defendant already has at his disposal virtually all of the information subject to the Government's CIPA Section 4 motion (including all information that could be considered helpful to the defense), rendering production of the classified information cumulative, given the Government's massive discovery disclosures to Defendant to date. *See Abu-Jihaad*, 630 F.3d at 142 (2010) (citing approvingly the district court's finding that "because one of the categories was cumulative of

---

[2]   Classified Information-11 is defined on page 21 and in Part III.L of the Government's motion.

information already provided to [defendant] in the course of discovery, . . . the government had no obligation to disclose such information").

Finally, the Court finds that the "Unclassified Summary," as that term is defined in Part III.L.3.c of the Government's motion, provides Defendant with substantially the same ability to make his defense as would full disclosure of the information contained within Classified Information-11 that it summarizes. The material that has been omitted from the Unclassified Summary is either not discoverable under *Brady* and its progeny, not subject to production pursuant to Rule 16, cumulative of information produced in unclassified discovery, or would not be helpful to the defense. *Aref*, 533 F.3d at 78. The Court thus approves the Government's proposal to substitute the Unclassified Summary for the information contained in Classified Information-11 that may be relevant and helpful to the defense.

## II.     Defendant's Opposition

None of Defendant's arguments in opposition to the Government's motion has any bearing on the Court's decision. Defendant first attempts to twist an innocuous sentence in a Government letter into a "gotcha" revelation that the Government's efforts pursuant to CIPA are a farce. In a September 1, 2020 letter, the Government stated that "the Rule 16 discovery in this case does not include any classified materials that would require a security clearance to review," and it was therefore "unclear why defense counsel believe[d] that [defense counsel's] security clearance process [was] delaying [Defendant's] ability to file pretrial motions." Dkt. 67 at 2. From this statement, Defendant asserts that CIPA is plainly inapplicable to this case, and there is thus no need for an *ex parte, in camera* motion, and no need to delete any material at all because there is clearly no classified material worth protecting. *See* Def. Mem. at 3–4. Defendant's argument is the definition of frivolous. The Government was clearly referring to the unclassified Rule 16 discovery that had been disclosed to Defendant, and the letter cannot reasonably be read

to suggest that there is no information in this case that could possibly be subject to a CIPA Section 4 motion.

Defendant also argues that a member of his defense team is a national security expert who possesses all necessary security clearances to review the material allegedly subject to CIPA protection. *See* Def. Mem. at 7. Accordingly, in Defendant's view, his cleared counsel must be able to review the CIPA-protected material to ensure that the Government followed all necessary procedures pursuant to FISA and similar statutes. *Id.* This exact argument is foreclosed by CIPA itself and has been rejected repeatedly by the Second Circuit and other courts to consider the issue. Section 4 of CIPA expressly provides for *ex parte* review by the district court, as does Rule 16(d)(1). *See* 18 U.S.C. app. 3 § 4 ("The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone."); Fed. R. Crim. P. 16(d)(1) ("The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*."); *Abu-Jihaad*, 630 F.3d at 143 ("[W]here the government moves to withhold classified information from the defense, 'an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.'" (quoting *Aref*, 533 F.3d at 81)); *Mejia*, 448 F.3d at 457 (holding that Section 4 of CIPA permits *ex parte*, *in camera* review of government motion for protective order); *United States v. Mostafa*, 992 F. Supp. 2d 335, 339 (S.D.N.Y. 2014) ("[C]ourts routinely uphold the practice of proceeding *ex parte* when the substance of the classified information that the Government seeks to be withheld from discovery is explicitly discussed in the relevant motion."). That defense counsel holds a security clearance has no bearing on whether a district court may conduct its review *ex parte* and *in camera* pursuant to Section 4 of CIPA. *See United States v. Al-Farekh*, 956 F.3d 99, 109 n.19 (2d Cir. 2020) ("Persons with an appropriate security clearance still may not have access to

classified information if they do not have a 'need to know' that information. A defense counsel does not 'need to know' classified information that is neither helpful nor material to the defense of his or her client." (internal citation omitted)); *Mostafa*, 992 F. Supp. 2d at 339 ("The Government's motion contains information that it deems highly sensitive and of great importance to the national security of the United States. Defense counsel's security clearance does not obviate the need for the Court to consider the Government's CIPA motion *ex parte* and *in camera*."); *see also United States v. Sedaghaty*, 728 F.3d 885, 909 (9th Cir. 2013) ("[T]he simple fact that defense counsel held security clearances does not mean that the attorneys were entitled to access the government's classified filings."); *United States v. El-Mezain*, 664 F.3d 467, 568 (5th Cir. 2011) (rejecting argument that defense counsel's security clearance overcame Government interest in secrecy); *United States v. Libby*, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006), *amended by* 429 F. Supp. 2d 46 (D.D.C. 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access every piece of classified information this country possesses.").

Defendant next argues that the nature of the charge against him — conspiracy to defraud the United States and to commit visa fraud — does not implicate any significant concerns of national security, rendering CIPA wholly inapplicable to Defendant's case. *See* Def. Mem. at 5. This argument is similarly unavailing; CIPA is concerned with the information at issue, not the crime charged. *See* 18 U.S.C. app. 3 § 4 (using terms such as "specified items of classified information" without reference to a particular type of criminal offense); *Aref*, 533 F.3d at 78 ("CIPA establishes procedures for handling classified information in criminal cases."); *Abu-Jihaad*, 2008 WL 346121, at *2 ("Because CIPA applies to classified information, any motion under CIPA must first establish that the information in question is classified.").

Defendant's final two arguments find no support in precedent — or common sense. First, Defendant argues that there is already significant publicity surrounding this case, and, therefore, there can be no further need for secrecy. *See* Def. Mem. at 5–7. This argument is illogical. The existence of publicity concerning the case is not proof of public awareness concerning the classified information that the Government seeks to delete pursuant to CIPA. Defendant has provided no evidence that the classified information the Government seeks to delete has been publicly disclosed, whether as a result of the press interest in this case or as a result of anything else.

Finally, Defendant also argues that the Government has already turned over massive troves of previously classified information as part of its Rule 16 discovery productions, demonstrating that there cannot be anything unique that remains classified. *See id.* at 7–8. This argument is equally illogical, and, unsurprisingly, there is no semblance of precedent to support it.

Accordingly, Defendant has failed to undercut the Court's conclusion that the Government has satisfied its burden pursuant to CIPA Section 4.

## CONCLUSION

For the reasons stated above, the Government's classified, *ex parte*, *in camera* motion for a protective order pursuant to Section 4 of CIPA and Fed. R. Crim. P. 16(d)(1) is GRANTED. Accordingly, with the exception of the Unclassified Summary discussed above, the classified information in the categories titled Classified Information-1 through Classified Information-11, as defined in the Government's motion, need not be disclosed to the defense. The Government must produce to defense counsel the Unclassified Summary, as defined in the Government's motion and as described herein, not later than **July 22, 2021**. Finally, the Court orders that the Government's submission, including its motion and supporting papers, is hereby sealed, and

shall remain preserved in the custody of the Classified Information Security Officer, in accordance with established court security procedures, until further order of this Court.

The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 58.

**SO ORDERED.**

Dated: July 8, 2021
      New York, New York

                                                Hon. Valerie Caproni
                                                United States District Judge