```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
   UNITED STATES OF AMERICA,                                   :
                                                               :
                                  Plaintiff,                   :
                                                               :         19-CR-804 (VEC)
                        -against-                              :
                                                               :              ORDER
   ZHONGSAN LIU,                                               :
                                                               :
                                  Defendant.                   :
-------------------------------------------------------------- X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   3/14/22
```

VALERIE CAPRONI, United States District Judge:

The Government has moved *in limine* to preclude the Defendant from calling Professor Jenny J. Lee to testify about a survey she conducted regarding the perceptions of Chinese and Chinese-American scientists in the United States (collectively "Chinese Scientists"). *See* Gov. Mem., Dkt. 182 at 1–7. It has also renewed its motion *in limine* to preclude Defendant from questioning witnesses or offering evidence regarding the "China Initiative." *See* Gov. Letter, Dkt. 193 at 1–4. The Court previously denied the latter without prejudice. *See* Order, Dkt. 188. Defendant opposes both motions. *See generally* Def. Response, Dkt. 187; Def. Letter, Dkt. 189; Def. Letter, Dkt. 194.

The Government's motion to preclude Prof. Lee's testimony is GRANTED. Defendant seeks to call Prof. Lee as an expert witness to present the results of a survey that she conducted of Chinese Scientists reflecting, in part, their perceptions of being racially profiled in the United States. *See* Ex. B, Dkt. 182-2. After discussion of the proposed testimony at the Final Pre-Trial Conference, Defendant submitted a letter providing a revised, narrowed scope for the intended expert testimony. Defendant explained that he would have Prof. Lee testify regarding her qualifications, findings, and methodology. He proffers that she will present only excerpts from

1

the study, excluding anecdotal statements submitted by survey respondents. Def. Letter, Dkt. 189 at 1. Even with the narrower scope proposed, and assuming *arguendo* that Prof. Lee would qualify as an expert on the perceptions of Chinese Scientists with respect to racial profiling of themselves in the United States, her proposed testimony has no probative value to the issues to be tried in this case and is inadmissible as irrelevant. Fed. R. Evid. 401.

Defendant argues that the survey and Prof. Lee's testimony are relevant to the interpretation of statements made by third parties on recorded calls that the Government intends to introduce. Def. Letter, Dkt. 189 at 2. While the Government seeks to show that certain statements by third parties reflect criminal intent, Defendant argues that Prof. Lee's survey will allow him to argue for a different interpretation. *Id.* Defendant seeks to argue that the recorded statements reflect not the speakers' knowledge that they are engaged in criminal conduct but their own perceptions that U.S.-China relations are deteriorating; in Defendant's version, their cautious behavior is due not to criminal culpability but to fear of mistreatment or being racially profiled. *Id.*

While the suggestion that there can be alternative interpretations of the third parties' recorded statements may be well-taken, the connection between Prof. Lee's study and Defendant's intended argument is tenuous, to say the least. The survey in question gathered the opinions of Chinese Scientists and compared them to non-Chinese Scientists with regard to a number of topics.[1] The individuals whose statements will be introduced during this trial, on the other hand, are not Chinese Scientists and have no known connection to the scientific community. Gov. Letter, Dkt. 193 at 5. Defendant argues, with no expert testimony or other evidence to help him with the logical leap, that if Chinese Scientists are significantly more

---

[1] The individuals surveyed were all scientists in academia (faculty, graduate students and post-doctoral students). Ex. B, Dkt. 182-2 at 3.

2

anxious and fearful of being racially profiled than non-Chinese scientists, then it is logical to infer that all Chinese and Chinese-Americans, scientists or not, are similarly more anxious and fearful of being racially profiled than non-Chinese and non-Chinese Americans. Therefore, the argument continues, the jury should consider that enhanced anxiety when interpreting the recorded statements of all Chinese and Chinese-American persons.

Among the problems with Defendant's argument is that the Court has no way to assess whether the views of Chinese Scientists are significantly different from other Chinese and Chinese-Americans in other professions and fields. Significantly, Prof. Lee surveyed only scientists in academia. *See* Ex. B, Dkt. 182-2 at 3. She did not survey academics as a whole, scientists as a whole, or Chinese and Chinese-Americans as a whole. While it could be that the opinions of Chinese Scientists in academia closely track all Chinese and Chinese-American academics or the population of all Chinese and Chinese-Americans in the United States, it is also possible that there are factors unique to the experience of scientists in academia that make them (or made them at the time of the survey) particularly sensitive to actual or perceived discrimination on the basis of nationality or ethnicity. Nothing in Prof. Lee's study allows that question to be answered. Because there is no basis, in evidence or logic, to extrapolate Prof. Lee's findings with regard to the perceptions of Chinese Scientists to all Chinese or Chinese-American people in the United States, the proffered testimony is simply not relevant.

To the extent that the survey and Prof. Lee's testimony could be considered relevant, the evidence appears to be a thinly disguised effort by the defense to distract the jury by suggesting that this prosecution is motivated by the Defendant's nationality. Because any marginal relevance the evidence may have is far outweighed by the danger of jury confusion, the evidence is also subject to exclusion pursuant to Federal Rule of Evidence 403.

The Government's renewed motion to preclude questioning or evidence regarding the China Initiative is GRANTED without prejudice to Defendant re-raising the issue should a development at trial render information about the China Initiative relevant. At this stage, there is no probative value in eliciting whether any Government witnesses had knowledge of the China Initiative, and whatever limited relevance that knowledge may have is far outweighed by the danger of confusion of the issues for the jury. *United States v. Tao*, No. 19-CV-20052, 2022 WL 252019, at *16 (D. Kan. Jan. 27, 2022) (granting request to preclude references to China Initiative because the "trial is about Defendant's guilt or innocence, and it should not involve a policy discussion" or "suggest[ ] to the jury that [Defendant] was the target of selective prosecution"); *see also* Fed. Rs. Evid. 401, 403.

Similar to the argument for admitting Prof. Lee's survey and testimony, Defendant's ostensible purpose for this line of questioning is to develop an argument that because many of the Government witnesses are familiar with the China Initiative, then it is more likely that the speakers on the tape were also. Because the speakers likely knew about the China Initiative, the argument goes, their statements must be interpreted through the prism of that knowledge. As a result, the taped statements that the Government argues reflect culpability actually reflect a "pervasive sense" of fear among Chinese and Chinese-Americans that relations between China and the United States have deteriorated. Def. Resp., Dkt. 159 at 11–12; 24.[2]

If the actual speakers who were recorded were testifying or if any of the actual speakers ever mentioned the China Initiative, perhaps Defendant could better connect the dots; but as the

---

[2] Although at the Final Pre-Trial Conference, Defendant indicated that another basis for questioning witnesses about the China Initiative and admitting evidence related to it would be to help the jury understand the nature of the resources the Government put into this case, that basis is clearly illegitimate and would prejudice the Government by calling into question its motivation for investigating Mr. Liu. *See, e.g., United States v. Anaconda Wire & Cable Co.*, 342 F. Supp. 1116, 1123 (S.D.N.Y. 1972) ("[T]he Government's motivation is generally legally irrelevant in all aspects of a criminal prosecution[.]").

Government points out, none of the Government witnesses participated in the calls in question and none of the recorded speakers mentions the China Initiative. Gov. Letter at 2. Whatever knowledge the Government's witnesses may have about the China Initiative reflects nothing about the knowledge or states of mind of unrelated third parties. Asking about the China Initiative would quickly devolve into evidence explaining why the Department of Justice announced a "China Initiative," and why it and the Federal Bureau of Investigation ("FBI") were focused on China as part of their counterintelligence program. That could quickly segue into the fact that this case was investigated as part of the FBI's counterintelligence program, evidence Defendant wishes to keep out of the case. Def. Mem., Dkt. 149 at 1–2. None of that evidence is remotely relevant to whether Defendant is guilty of the charged crime. In short, evidence related to the China Initiative is not relevant.

To the extent that anything related to the China Initiative might be relevant, for similar reasons, the Court finds that it should be excluded because it is highly likely to confuse the jury and waste time. Fed. R. Evid. 403. As a result, Defendant may not question witnesses about the China Initiative, and Defendant's exhibits pertaining to the China Initiative may not be admitted.[3]

IT IS FURTHER ORDERED that the Clerk of Court is respectfully directed to close the open motion at Docket 182.

**SO ORDERED.**

Date: **March 14, 2022**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[3] Should the evidence at trial develop in unexpected ways such that the Defendant believes that the knowledge of a particular witness regarding the existence and scope of the China Initiative is relevant, Defendant can re-raise the issue. He must, however, do so out of the presence of the jury.